CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

AUG 0 9 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

D. KAY MALONE )
)
    Plaintiff, )
)
                 Civil Action No.: 5:04CV00114
v. )
)
                 **MEMORANDUM OPINION**
SHENANDOAH COUNTY )  By: Hon. Glen E. Conrad
DEPARTMENT OF SOCIAL )  United States District Judge
SERVICES, et al. )
)
    Defendants. )

      D. Kay Malone brings this action against her former employer, the Shenandoah County

Department of Social Services (DSS), and its director, John T. Ayers. The plaintiff alleges that

the defendants retaliated against her in violation of Title VII of the Civil Rights Act of 1964

(Title VII), 42 U.S.C. § 2000e et seq., and the Family and Medical Leave Act of 1993 (FMLA),

29 U.S.C. §§ 2601 et seq. The case is presently before the court on the defendants' motion to

dismiss. For the reasons that follow, the defendants' motion will be granted in part and denied in

part.

### Background

      The plaintiff began working as a fraud investigator for DSS in September 1999. By the

end of 2002, the plaintiff was promoted to the position of community services coordinator. In

this capacity, the plaintiff supervised the foster care program and acted as an executive assistant

to John Ayers. The plaintiff was often involved in decisions relating to employee disciplinary

matters and employee leave.

      On December 23, 2002, Chanda Poole, a pregnant employee of DSS, approached the

plaintiff and inquired about her rights under the FMLA. Poole's baby was due in late January

2003, near the date of her first anniversary of service with DSS. Poole asked the plaintiff whether she could return to work on a part-time basis after her child was born rather than taking a full period of maternity leave. The plaintiff provided Poole information from the United States Department of Labor regarding the FMLA.

At the time Poole spoke to the plaintiff, Ayers was on vacation. Upon his return, the plaintiff discussed Poole's situation with him. When Ayers informed the plaintiff that he planned to terminate Poole's employment, the plaintiff opposed the proposed termination. The plaintiff believed that Poole was entitled to FMLA leave around the time of her expected due date, and that Poole's termination would violate Title VII and the FMLA. Ayers allegedly became angry when the plaintiff expressed her opposition to the proposed termination.

Poole delivered her baby on January 5, 2003, several weeks before the baby's due date. Poole's first anniversary with DSS was not until January 28, 2003. Poole's supervisor allegedly approached her in mid-January and gave her the option to resign or be terminated. Poole apparently refused to resign, and DSS terminated her employment in a letter mailed on January 23, 2003.

The plaintiff alleges that she began experiencing a pattern of retaliatory and discriminatory conduct from the time she first expressed her opposition to Poole's termination. According to the plaintiff, Ayers made false statements regarding her work performance and spoke to her in a confrontational manner for no apparent reason. In April 2003, Ayers removed the plaintiff's supervisory duties over the foster care program. On May 7, 2003, the plaintiff wrote a letter to the members of the Social Services Board in which she informed them of Ayers' retaliatory actions. A short time thereafter, Ayers posed additional limitations on the plaintiff's supervisory duties, and in July 2003, the plaintiff was ultimately terminated.

2

The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on August 15, 2003. On September 28, 2004, the plaintiff received a right-to-sue notice from the EEOC. She filed the present action on December 22, 2004.

## Standard of Review

The defendants have moved to dismiss the plaintiff's Title VII claim as to Ayers pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The defendants have moved to dismiss the plaintiff's FMLA claim against both defendants for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

When deciding a motion to dismiss under Rule 12(b)(6), the court must determine "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." Eastern Shore Market, Inc. v .J.D. Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). The court must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. The court should not dismiss a complaint for failure to state a claim, unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that subject matter jurisdiction exists in federal court. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). The court should not grant a Rule 12(b)(1) motion to dismiss unless "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

---

[1] The defendants did not move to dismiss the plaintiff's Title VII claim as to DSS.

3

## Analysis

### 1. Plaintiff's Title VII Claim

Count one of the plaintiff's complaint alleges that DSS and Ayers, in his official capacity, retaliated against her because she opposed the termination of Poole, a pregnant employee. Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees...because [she] has opposed any practice made an unlawful employment practice by this subchapter...." 42 U.S.C. § 2000e-3(a). The court notes that it is an unlawful employment practice for an employer to discharge an employee on the basis of pregnancy or childbirth. See 42 U.S.C. §§ 2000e-2(a) and 2000e(k).

The defendants argue that the plaintiff's Title VII claim against Ayers, in his official capacity, should be dismissed because he was not the plaintiff's "employer." The defendants emphasize that although Title VII defines the term "employer" to include "any agent" of the employer, 42 U.S.C. § 2000e(b), the United States Court of Appeals for the Fourth Circuit has held that "supervisors are not liable in their individual capacities for Title VII violations." Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998). While the Lissau decision would preclude a Title VII claim against Ayers in his individual capacity, the plaintiff correctly points out that her Title VII claim is asserted against Ayers in his official capacity. Nevertheless, the court agrees with the defendants' alternative argument that the Title VII claim against Ayers, in his official capacity, is redundant and may be dismissed since the claim is also asserted against DSS. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (concluding that since an official capacity claim is essentially a claim against the government entity itself, it may be dismissed when the government entity is also sued). Therefore, the defendants' motion to dismiss will be granted with respect to the plaintiff's Title VII claim against Ayers.

4

### 2. Plaintiff's FMLA Claim

Count two of the plaintiff's complaint alleges that the defendants retaliated against her for opposing Poole's termination and because she provided Poole information related to FMLA leave. The FMLA authorizes "eligible employees"[2] to take up to twelve weeks of unpaid leave per year for one or more of the following reasons: (1) for the birth and care of a child; (2) for the adoption or foster care of a child; (2) to care for a spouse, child, or parent who has a serious health condition; and (4) because of a serious health condition of the employee that makes the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1)(A)-(D). To ensure that employees are able to take full advantage of these leave provisions, the FMLA prohibits employers from interfering with, restraining, or denying an employee's exercise of her rights under the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA also prohibits employers from engaging in certain retaliatory activities: (1) they may not "discharge or in any manner discriminate against any individual for opposing any practice made unlawful by" the FMLA, 29 U.S.C. § 2615(a)(2); and (2) they cannot:

> discharge or in any manner discriminate against any individual because such individual ... has filed any charged ... related to [the FMLA] .... has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under [the FMLA] or ... has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under [the FMLA].

29 U.S.C. § 2615(b).

### a. Eleventh Amendment Immunity

The defendants first argue that they are immune from liability under the FMLA, because they are shielded by the Eleventh Amendment. "While the Amendment by its terms does not bar

---

[2] In order to qualify as an "eligible employee," an employee must have worked for at least 12 months with her employer and for at least 1,250 hours during that 12-month period. 29 U.S.C. § 2611(2)(A).

suits against a State by its own citizens, [the United States Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). The Amendment protects "state agents and state instrumentalities" as well as the states themselves. Regents of Univ. of California v. Doe, 519 U.S. 425, 429 (1997).

In response to the defendants' argument, the plaintiff contends that Congress validly abrogated the states' Eleventh Amendment immunity when it enacted the FMLA.[3] Congress may abrogate this immunity if it makes its intention to abrogate unmistakeably clear in the language of the statute and acts pursuant to a valid exercise of its authority under § 5 of the Fourteenth Amendment. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996). Section 5 authorizes Congress to enact "appropriate legislation" to enforce the substantive guarantees of § 1, including equal protection of the laws. Such legislation may not only codify the Supreme Court's holdings concerning the rights established by the Fourteenth Amendment, but also deter future violations of the Fourteenth Amendment. City of Boerne v. Flores, 521 U.S. 507, 518 (1997). However, valid § 5 legislation must exhibit "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." Id. at 520.

Prior to May, 2003, several circuit courts, including the Fourth Circuit, had held that although Congress intended to abrogate the states' Eleventh Amendment immunity when it enacted the FMLA,[4] Congress failed to validly do so. See Lizzi v. Alexander, 255 F.3d 128, 134 (4th Cir. 2001); Laro v. New Hampshire, 259 F.3d 1, 5 (1st Cir. 2001); Hale v. Mann 219 F.3d 61, 67 (2nd Cir. 2000); Chittister v. Dep't of Cmty. & Econ. Development, 226 F.3d 223, 228 (3rd

---

[3] At this stage of the proceedings, the plaintiff does not dispute that DSS is essentially an arm of the state.
[4] The FMLA enables employees to seek damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction," 29 U.S.C. § 2617(a)(2), and Congress has defined "public agency" to include both "the government of a State or political subdivision thereof" and "any agency of ... a State, or a political subdivision of a State," § 2611(4)(A)(iii).

6

Cir. 2000); Kazmier v. Widmann, 225 F.3d 519, 523 (5th Cir. 2000). Then, on May 27, 2003, the United States Supreme Court issued its decision in Nevada Department of Human Resources v. Hibbs, 538 U.S. 721 (2003). In Hibbs, the Supreme Court addressed whether Congress acted within its constitutional authority when it sought to abrogate the states' immunity with regard to the FMLA's family-care provision.[5]

The Court began by identifying the Fourteenth Amendment right at issue in that case – the right to be free from gender-based discrimination. Id. at 728. Having identified the relevant Fourteenth Amendment right, the Court turned to the question of whether Congress enacted the FMLA in response to a pattern of unconstitutional gender discrimination in the workplace. Id. at 729. Citing earlier decisions in which the Court sanctioned state laws limiting women's employment opportunities, the Court noted that until its decision in Reed v. Reed, 404 U.S. 71 (1971), "it remained the prevailing doctrine that government, both federal and state, could withhold from women opportunities accorded men so long as any 'basis in reason' could be conceived for the discrimination." Id. at 729-730 (internal citations omitted). The legislative history of the FMLA also showed that at the time of its enactment in 1993, states "continue[d] to rely on invalid stereotypes in the employment context, specifically in the administration of leave benefits." Id. at 730. For instance, "Congress heard testimony that 'parental leave for fathers ... is rare,'" and that "even ... [w]here child-care leave policies do exist, men, both in the public and private sectors, receive notoriously discriminatory treatment in their requests for such leave." Id. at 731 (internal citations omitted). All of this evidence suggested that "the States' record of unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits [was] weighty enough to justify the enactment of prophylactic §

---

[5] The family-care provision entitles eligible employees to take up to twelve weeks of unpaid leave to care for a spouse, child, or parent who has a serious health condition. 29 U.S.C. § 2612(a)(1)(C).

Case 5:04-cv-00114-GEC-BWC Document 20 Filed 08/09/05 Page 7 of 12 Pageid#: 105

5 legislation." Id. at 735. The Court ultimately determined that the family-care provision of the FMLA was a congruent and proportional response to this pattern of discrimination, since it provided an "across-the-board, routine employment benefit for all eligible employees," irrespective of gender. Id. at 736-737.

By its own terms, the Supreme Court's holding in Hibbs was limited to the family-care provision of the FMLA.[6] See id. at 740. Nevertheless, the analysis employed by the Supreme Court is instructive. The plaintiff alleges that she was retaliated against for providing a pregnant employee information regarding maternity leave under the FMLA and for opposing the employee's proposed termination. As previously stated, the FMLA permits eligible employees to take up to twelve weeks of unpaid leave for the birth and care of a child.[7] 29 U.S.C.§ 2612(a)(1)(A) (the "childbirth provision"). Like the family-care provision at issue in Hibbs, the enactment of the childbirth provision was motivated by the states' record of gender-based discrimination in the administration of leave benefits. The Supreme Court provided an example of such discrimination in the Hibbs decision:

> Many States offered women extended "maternity" leave that far exceeded the typical 4- to 8-week period of physical disability due to pregnancy and childbirth, but very few States granted men a parallel benefit: Fifteen States provided women up to one year of extended maternity leave, while only four provided men with the same.

Id. at 731. As the Supreme Court emphasized, these "differential leave policies were not attributable to any differential physical needs of men and women, but rather to the pervasive sex-role stereotype that caring for family members is women's work." Id. Therefore, by providing a

---

[6] The court notes that in Montgomery v. Maryland, 72 Fed. Appx. 17 (4th Cir. 2003) (unpublished), the Fourth Circuit suggested that the Hibbs decision applies to the FMLA in its entirety. However, other courts have determined that the Hibbs decision only implicates the family-care provision. See Bryant v. Miss. State Univ., 329 F. Supp. 2d 818, 827 (E.D. Miss. 2004) (holding that the self-care provision of the FMLA did not result in a valid abrogation of states' sovereign immunity); Brockman v. Wy. Dept. of Family Serv., 342 F.3d 1159, 1165 (10th Cir. 2003) (same).

[7] The court disagrees with the defendants' assertion that maternity leave is covered under the self-care provision of the FMLA, § 2612(a)(1)(D).

minimum standard of leave after childbirth for eligible employees, irrespective of gender, the FMLA's childbirth provision also provides a congruent and proportional remedy for gender discrimination.

The defendants contend that, while Congress may have identified a pattern of unconstitutional gender discrimination by the states with respect to certain types of leave, there is "no basis upon which to claim that women are disproportionately retaliated against as compared with men." Therefore, the defendants contend that the enactment of the FMLA's retaliation provisions was improper. However, the fact that there is no evidence of gender-related retaliatory conduct by the states in the FMLA's legislative history is not dispositive of the issue of whether the retaliation provisions of the FMLA are an adequate exercise of Congress's authority under the Fourteenth Amendment. See Crumpacker v. Kansas Dept. of Human Resources, 338 F.3d 1163, 1170 (10th Cir. 2003) (holding that Congress properly abrogated the states' immunity from retaliation claims under Title VII, even though Title VII's legislative history includes no evidence of a pattern of retaliatory conduct by the states); Warren v. Prejean, 301 F.3d 893, 899 (8th Cir. 2002) (same). Congress clearly identified a pattern of gender discrimination by the states with respect to the administration of leave following the birth of a child. By enacting the retaliation provisions, Congress ensured that state employees could utilize the protections offered by the FMLA without the fear of retaliatory conduct. The court concludes that the retaliation provisions, when used in conjunction with the childbirth provision, are a congruent and proportional remedy for gender discrimination. Therefore, the defendants are not entitled to Eleventh Amendment immunity with respect to the plaintiff's FMLA claim.

Case 5:04-cv-00114-GFC-BWC   Document 28   Filed 08/09/05   Page 9 of 12   PageID#: 107

### b. The Legal Sufficiency of the Plaintiff's FMLA Claim

The court must next consider the defendants' argument that the Plaintiff's FMLA claim must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For retaliation claims under the FMLA, courts have applied the McDonnell Douglas burden shifting analysis applicable to Title VII retaliation claims. See Cline v. Wal-mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1997); Raith v. Johns Hopkins Univ., 171 F.2d 515, 519 (D. Md. 2000). In order to establish a prima facie case of retaliation under the FMLA, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action. Knussman v. Maryland, 16 F. Supp.2d 601, 613 (D. Md. 1998).

The defendants essentially argue that the plaintiff's retaliation claims fail at the first step. Since Ms. Poole had not been employed for twelve months at the time of her termination, the defendants contend that the plaintiff did not oppose "a practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). Likewise, the plaintiffs contend that because Ms. Poole was not eligible for FMLA benefits at the time she requested information from the plaintiff, the plaintiff is not protected by § 2615(b)(2). The court disagrees.

According to the legislative history of the FMLA, § 2615(a)(2) is "derived from Title VII ... and is intended to be construed in the same manner." Senate Rep. No. 103-3. As under Title VII, "an employee is protected against employer retaliation for opposing any practice that he or she reasonably believes to be a violation." Id. (emphasis added). See also Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir. 1990) (noting that the first element of a prima facie case of retaliation is established "if the plaintiff can show that [she] opposed an unlawful employment practice which [she] reasonably believed had occurred."); Ross v. Communications Satellite

Case 5:04-cv-00114-GEC-BWC   Document 26   Filed 08/09/05   Page 10 of 12   Pageid#: 108

Corp., 759 F.2d 355, 355 at n. 1 (4th Cir. 1989) (noting that "[a]n underlying discriminatory charge need not be meritorious for a plaintiff to prevail on a claim of retaliation for opposition to the perceived discrimination."). Therefore, at this stage of the proceedings, the plaintiff's retaliation claim under § 2615(a)(2) is not precluded by the fact that Ms. Poole had not been employed for a year at the time the plaintiff opposed Ms. Poole's termination.

Ms. Poole's employment status also has no effect on the plaintiff's ability to state a claim for retaliation under § 2615(b)(2). As previously stated, this section prohibits employers from discriminating against an individual for giving "any information in connection with <u>any inquiry</u> ... related to <u>any right</u>" provided by the FMLA. 29 U.S.C. § 2615(b)(2) (emphasis added). The defendants argue that the plaintiff is not protected by this section, because the plaintiff gave information about the FMLA to a person who was not eligible for FMLA leave. However, there is no language in § 2615(b)(2) that would suggest that its protection is limited to individuals who provide information to eligible employees.

The plaintiff's complaint alleges that she provided Ms. Poole information relating to her anticipated rights under the FMLA following the delivery of her child; that she opposed Ms. Poole's proposed termination as being in violation of the FMLA; that the defendants acted adversely against her; and that the defendants' adverse actions resulted from her opposition to Ms. Poole's termination and the fact that she provided Ms. Poole information regarding the FMLA. Regardless of what may happen at summary judgment or at trial, these allegations are sufficient to withstand the defendants' Rule 12(b)(6) motion. Accordingly, the court will deny the defendants' motion to dismiss with respect to the plaintiff's FMLA claim.

The Clerk is directed to send certified copies of this Memorandum Opinion and the

11

accompanying Order to all counsel of record.

ENTER: This ___9th___ day of August, 2005.

_____
United States District Judge